UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDERICK J. GREDE, not individually but as Liquidation Trustee of the Sentinel Liquidation Trust, Assignee of certain claims,<br><br>Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON and THE BANK OF NEW YORK MELLON CORP.,<br><br>Defendants. | No. 09 C 1919<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

**I. BACKGROUND**

Plaintiff, Liquidation Trustee as Assignee of certain creditor claims, brings this action against Defendants alleging that they aided and abetted debtor investment manager's breach of fiduciary duty to its customers, aided and abetted debtor's fraud, and acted negligently toward debtor's customers. Defendants now move to dismiss the complaint for lack of standing, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Rule 12(b)(6). For the following reasons, Defendants' motion is granted.

**II. STATEMENT OF RELEVANT FACTS**

Plaintiff in this case is the Liquidation Trustee of the Sentinel Liquidation Trust. Sentinel was an investment manager for sophisticated clients, including commodity brokers, hedge and pension funds, and financial institutions. Sentinel was a Bank of New York ("BNY") customer, initially as a client of its custodial services group and then as a client of its clearing services

division.  Trustee alleges that Sentinel insiders engaged in a fraudulent scheme to leverage customer assets, putting the company and the customers at risk if the market were to decline.  This is exactly what happened, and in August 2007, Sentinel collapsed and filed for bankruptcy.  Trustee alleges that Defendants knew of and participated in this scheme by establishing an account structure that facilitated the commingling of assets that should have been segregated and the misuse of customer funds.  In early 2008, Trustee filed an adversary action against Defendants on the basis of their alleged misconduct, seeking to recover for the Liquidation Trust the value of the customer assets that he alleges were improperly desegrated and used as leverage.  *See Grede v. Bank of New York*, No. 08 C 2582, 2009 WL 188460 (N.D. Ill. 2009).  In 2009, Trustee filed another action against Defendants, this time as assignee of certain of Sentinel's customers' claims, seeking to recover the millions lost by these customers.  Because Plaintiff's allegations in this case (the "customer action") are substantially similar to those asserted in the initial action against Defendants (the "Trustee action"), I see no need to restate them in great detail and refer the reader to the Trustee action for a more comprehensive factual background with regard to debtor Sentinel's business and the alleged misconduct by Defendants.  *Id.*  I will, however, address a few facts relevant to this case specifically.

On December 15, 2008, the bankruptcy court entered an order confirming the Fourth Amended Chapter 11 Plan of Liquidation for Sentinel (the "Plan").  Trustee, formerly the Chapter 11 trustee for Sentinel, became the Liquidation Trustee for the Sentinel Liquidation Trust (the "Trust"), which represents Sentinel's estate.  As part of the Plan, claims held by Sentinel's customers who accepted the Plan were transferred to the Liquidation Trust, and the Trust became the assignee of the claims.  The Plan established a distinct tranche of the Trust to

hold the non-estate customer claims assigned to the Trust. Claims held in this tranche do not become property of the estate, and non-assignors of claims are entitled to no distributions from this special tranche. It is the assigned customer claims that Trustee now asserts against Defendants.[1] Defendants move to dismiss Trustee's complaint for lack of standing, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Rule 12(b)(6). Because Trustee does not have standing to bring the assigned claims, I need not reach the issue of the sufficiency of the complaint.

## III. DISCUSSION

### A. Whether Defendants' Standing Challenge is Barred by Res Judicata

The first issue I must address is Trustee's contention that res judicata bars BNY's standing challenge. Because the assignments at issue were made pursuant to Sentinel's chapter 11 liquidation plan – a plan approved by the bankruptcy court – Trustee maintains that Defendants are now launching "a collateral attack on the power of the Bankruptcy Court to effect an assignment of the claims by approving the Plan." *Semi-Tech Litig., LLC v. Bankers Trust Co.*, 272 F. Supp. 2d 319, 324 (S.D.N.Y. 2003). I am not persuaded by this argument and find that res judicata does not bar BNY's standing challenge.

"To apply res judicata, three essential elements must exist: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or privies in the two suits." *Wade v. Hopper* 993 F.2d 1246, 1252 (7th Cir. 1993). "The doctrine of res judicata bars suit on matters which were raised or

---

[1] Trustee asserts the claims of customers who accepted the Plan together with those of certain additional customers who did not accept the Plan.

could have been raised in previous litigation between the parties." *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990). According to Trustee, Defendants have litigated their objections to the confirmation of the Plan. Although they did not challenge Trustee's standing to bring the assigned claims, they did challenge the assignments on other grounds. It was during that proceeding, Trustee argues, that the standing challenge should have been made.

This argument is problematic for two reasons. First, it appears that Defendants' objections to the plan were never ruled on, since the parties settled their dispute with regard to the Plan. Next, Trustee's contention that Defendants essentially waived their standing objection is unavailing. Standing, a jurisdictional question, cannot be waived. *Wiggins v. Martin*, 150 F.3d 671, 673 (7th Cir. 1998). While "[i]t is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan," *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000) (citing 11 U.S.C. § 1327(a)), confirmation of a bankruptcy plan "is res judicata only as to issues that can be raised in the less formal procedure for contested matters[.]" *Strong v. IRS* (*In re Strong*), 203 B.R. 105, 114 (Bankr. N.D. Ill. 1996) (holding that "confirmation generally cannot have preclusive effect as to the validity of a lien, which must be resolved in an adversary proceeding as mandated by Fed.R.Bankr.P. 7001(2)."). "[A] confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all the creditors." *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000). But proceedings to recover money are adversarial under the Federal Rule of Bankruptcy Procedure 7001(1) and are more formal than contested matters. *In re Matter of Beard*, 112 B.R. 951, 955 (Bankr. N.D. Ind. 1990). Adversarial matters are initiated by a summons and

4

complaint, to which defendants are expected to respond. *Id.* Contested matters are typically dealt with by motion and a response is generally not necessary. *Id.* "If an adversary proceeding is required to resolve the disputed rights of third parties, the potential defendant has the right to expect that the proper procedures will be followed." *Id.* It is difficult to see how the issue of standing in this adversarial action could have been litigated as part of the less-formal confirmation process before the adversarial action itself was even filed.

In support of his argument, Trustee relies on *Semi-Tech*, where the plaintiff, an entity created by a liquidation plan, brought claims assigned by debtor's creditors against a third-party defendant.[2] The defendant challenged the plaintiff's standing generally to assert such claims and also challenged the validity of the Bankruptcy Court's assignment of the claims. The court found that the attack on the validity of the assignments was a collateral one on the power of the bankruptcy court, barred by res judicata, but addressed the general standing challenge on the merits. In this case, Defendants are not claiming that assignments pursuant to the liquidation plan are invalid, only that Trustee has no standing to bring the assigned claims. Similar to *Semi-Tech*, the standing issue before me must be addressed on the merits.

---

[2] Trustee also relies on *In re J. Allan Steel Company*, 323 B.R. 425, 433 (Bankr. W.D. Pa. 2005) for the proposition that Defendants should have raised their standing challenge during the confirmation stage. In that case, the court held that the defendant's standing challenge to creditors' committee's adversarial action, authorized by the Bankruptcy Court, was barred by res judicata because the defendant "had ample opportunity at the confirmation hearing to object to the provision of debtor's plan delegating the power to bring avoidance actions to the Committee[,]" but failed to do so. *Id.* However, the court points to no case law in support of its conclusion that the issue of standing in a future adversarial proceeding should be decided at the time of a bankruptcy plan's confirmation hearing. I respectfully decline to follow the court's reasoning in that case.

**B. Standing**

Defendants argue that the Trustee lacks standing to bring this suit because the individual claims at issue here belong to third-party creditors and are non-estate claims. Federal bankruptcy law "places a trustee in the shoes of the bankrupt corporation and affords the trustee standing to assert any claims that the corporation could have instituted prior to filing its petition for bankruptcy." *In re CBI Holding Co., Inc.*, 529 F.3d 432, 454 (2d Cir. 2008). The claims presented here are, according to the Amended Complaint, "the direct claims of certain of Sentinel's customers." In other words, Sentinel's customers are seeking recovery for harms BNY allegedly caused them, not Sentinel itself. Defendants maintain that because these claims involve monies owed not to the estate, but to the customers directly, the Trustee has no authority, and thus no standing, to bring this suit on their behalf.

Trustee makes essentially two arguments in support of his contention that he does indeed have standing to bring the assigned customer claims. First, according to Trustee, the fact that the claims at issue were assigned to the Liquidation Trust under the Plan approved by the bankruptcy court makes all the difference. He argues that as assignee, he is stepping directly into the shoes of the assignors and should not be treated any differently from any other assignee. Second, Trustee argues that where any recovery would not go directly to particular assignors but would be shared by them pro rata, the Trustee is the real party in interest, and should not be barred from bringing the assigned actions.

"[A] litigant seeking relief in federal court must satisfy both constitutional and prudential limitations in order to have standing to sue." *Locals 666 and 780 of Intern. Alliance of Theatrical Stage Employees and Moving Picture Mach. Operators of United States and Canada,*

*AFL-CIO v. U.S. Dept. of Labor*, 760 F.2d 141, 143 (7th Cir. 1985). "The prudential limitations on standing are those imposed by the courts themselves[.]" *Id.* "One well-established prudential-standing limitation is the principle that a litigant cannot sue in federal court to enforce the rights of third parties." *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 757 (7th Cir. 2008). "When a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party. He has no interest in the suit." *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994).

The liquidation trustee is specifically authorized to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1). "Property of the estate" under § 541(a) has "uniformly been interpreted to include causes of action." *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 901 (7th Cir. 2000). The United States Bankruptcy Code (the "Code"), from where a trustee derives his powers, does not authorize a trustee to "collect money not owed to the estate." *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 428 (1972). In *Caplin*, the Court held that a Chapter X Trustee did not have standing to bring, on behalf of debtor's debenture holders, claims against a third party. The Court's decision was informed by three factors: (1) the Code does not authorize a trustee "to collect money not owed to the estate"; (2) it was unclear whether, where debtor and third party may have been *in pari delicto*, the third party would be entitled to be subrogated to the claims of the debenture holders; and (3) the possibility that the trustee's action would produce outcome inconsistent with any independent actions the debenture holders might themselves bring. *Id.* at

1685-1688. Because granting the trustee standing would have increased litigation "or at least complicated" it, the Court declined to do so. *Id.* at 434.

Trustee first argues that this case is distinguishable from *Caplin* since the claims at issue in this case were assigned to the liquidation Trust under the Plan approved by the Bankruptcy Court. He argues that as assignee, he is stepping directly into the shoes of the assignors, and that his statutory authority is not implicated. Trustee relies on *Sprint Communications Company v. APCC Services, Inc.*, a case that did not involve a bankruptcy trustee, where the Supreme Court recognized that "an assignee can sue based on his assignor's injuries," and "federal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit." 128 S. Ct. 2531, 2542, 2543 (2008). Under *Sprint*, he argues, the fact that only those customers who assigned their claims will benefit from any recovery in this case is no reason to deny standing. 128 S. Ct. at 2543 (reasoning "[w]hat does it matter what the [assignors] do with the money afterward? The injuries would be redressed whether the [assignors] remit the litigation proceeds to the [customers], donate them to charity, or use them to build new corporate headquarters."). According to Trustee, he should not be treated any differently from any other assignee.

This argument is unpersuasive in light of case law involving powers of trustees. In *Williams v. California 1st Bank*, 859 F.2d 664, 666 (9th Cir. 1988),[3] the Court held that the same

---

[3] Trustee relies on *Semi-Tech Litigation, LLC v. Bankers Trust Company*, where the court found *Williams* unpersuasive and saw "no basis for treating an assignee created by, or assignments made pursuant to, a Chapter 11 plan any differently" from an assignee or assignment created outside the bankruptcy context. 272 F. Supp. 2d 319, 324 (S.D.N.Y. 2003). In that case, the court considered neither the priority of claims nor the issue of subrogation, discussed *infra* – issues significant to this case. For this reason I am not persuaded by the court's analysis in *Semi-Tech*, and rely instead on the reasoning in *Williams*. Furthermore, in *Semi-Tech*, the court did not

concerns that militated against standing in *Caplin* bar a liquidation trustee from suing third parties on behalf of estate creditors even where the creditor claims are assigned to the trustee. The Court in *Williams* addressed the Trustee's authority to bring assigned creditor claims. There, the creditor-assignors were to receive the bulk of any recovery, with only administrative costs from a favorable judgment going to the estate. The Court determined that the creditors, not the estate, were the "real party in interest." *Williams*, 859 F.2d at 666. Because the trustee in that case was "attempting to collect money not owed to the estate[,]" he did not have the authority under the Code to bring the creditor claims, notwithstanding the assignment. *Id.* at 666-67. In discussing the benefits of court-approved assignment of creditor claims, the Court in *In re CBI Holding* remarked that "[a]llowing a debtor's creditors to assign their claims *for the benefit of the debtor's estate* permits debtors, creditors, and bankruptcy courts the flexibility in reorganizing or liquidating a debtor's assets necessary to achieve efficient administration of the reorganization or liquidation." 529 F.3d at 549 (emphasis added); *see also Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 512-513 (4th Cir. 2005) (holding that trustee may bring assigned creditor claims where estate is the real party in interest). Even where a trustee brings assigned claims, he is still subject to the Code's requirement that he act for the benefit of the estate.

---

discuss how any recovery would be distributed, another significant matter here. In *In re CBI Holding Co., Inc*. 529 F.3d at 459, the Second Circuit discussed *Semi-Tech's* holding "that a trustee may assert claims assigned to it by a bankrupt's creditors *for the benefit of the estate*, because those claims *can become property of the estate* under § 541(a)(7)." This suggests that the trustee must continue to act pursuant to his authority under the Code, even where he is the assignee of creditors' claims. However, in this case, the Plan explicitly states that the assigned non-estate claims shall not become property of the estate. In this way, the case before me is distinguishable from *Semi-Tech*, and the notion articulated therein that trustee assignees should not be treated any differently from non-trustee assignees does not apply here.

Policy also suggests that Trustee should be treated differently from a non-trustee assignee. "As a creature of statute, the trustee in bankruptcy has only those powers conferred upon him by the Bankruptcy Code." *In re Cannon*, 277 F.3d 838, 853 (6th Cir. 2002) (citation omitted). Trustee in this case brings the assigned claims as Trustee, not in his personal capacity. As Trustee, the estate pays his legal fees and costs. Failure to prevail on his claim would diminish the assets available to creditors of the estate. It is for this reason Trustee should be limited to his powers under the Code. Trustee should not be permitted to bring claims for the benefit of the few at the expense of the many.[4]

Trustee next argues that *Williams* does not apply here since the proceeds of the assigned claims will be distributed in accordance with a court-approved bankruptcy plan. In support of this position, Trustee cites *In re CBI Holding Company, Inc.*, 529 F.3d at 458, where the Court recognized a trustee's ability to bring assigned creditor actions against third parties. "We can think of many arguments against allowing a trustee to usurp the claims of a bankrupt's non-cooperating creditors that do not counsel against permitting creditors to voluntarily transfer their claims to a trustee as part of a court-approved plan of reorganization or liquidation." *Id.*[5]

---

[4] It is true that Trustee has also filed a claim against BNY on behalf of the estate, however, discovery would not be entirely duplicative and would in this action be the source of extra expense.

[5] The language in *In re CBI Holding* is not difficult to construe. What does it mean to say "We can think of many arguments against [usurping] that do not counsel [against assignment]"? One thing that is not said is that "all arguments against usurping do not counsel against assignment." This excerpt from *CBI* is in the language of dicta, not of holding. And it is the language of dicta because the Judges on the panel understood the key issue was whether the "adverse interest" exception (allowing a trustee to step out of the "shoes" of the failed company) applied in light of the facts found by the Bankruptcy Judge. Besides the fact the language is dicta, it is not intended to be read as a thorough analysis of the proposition it mentions. It is, I noted, incomplete as a statement that trustees can sue as assignees of individual creditors. Dicta can be persuasive but the court did not intend to persuade, or it would have said more.

According to Trustee, where any recovery would not go directly to particular assignors but would be shared by them pro rata, the Trustee is the real party in interest, and *Williams* does not apply.

Trustee's analysis misses the mark. In order for the estate to be the real party in interest, any recovery must come into the estate to then be distributed according to the order of priority prescribed by the Code. In *In re Bogdan*, the court expressly distinguished the case before it from *Williams*, explaining that

> Unlike the investors in *Williams*, the [assignors] in this case will recover, if at all, by sharing from the general assets of the estate on a pro rata basis *with all other creditors*. So, unlike the trustee in *Williams*, Bogdan's trustee is seeking to collect money it claims the alleged coconspirators owe the trustee as assignee and *representative of the estate*, not money owed to specific creditors. Accordingly, Bogdan's estate is the real party in interest in this adversary proceeding.

*In re Bogdan*, 414 F.3d at 513 (emphasis added). In *Bogdan*, the fact that any recovery would go to the estate, from which the assignors, like all other creditors, would recover on a pro rata basis, meant that the trustee was bringing action to collect money owed to the estate for the benefit of all of the creditors. The court in *Steinberg v. Kendig (In re Ben Franklin Retail Stores, Inc.)*, 225 B.R. 646, 651 (Bankr. N.D. Ill. 1998) drew a similar distinction, noting that there, "the estates are the real parties in interest, and any proceeds will come into the estates, to be distributed in accordance with the bankruptcy code."

In this case, under the Plan, recovery on the assigned claims would be pooled together into a special tranche of the Trust and "distributed to the assignors in accordance with the priorities established by the Plan." It is true that the tranche is part of the Trust, however non-assignors may not recover from the tranche. This structure excludes a significant intermediary link in the chain of recovery – that the proceeds come "into the estate," to be distributed pro rata

11

among assignors and non-assignors alike. Without this link, the estate has no interest in the claims, and Trustee has no authority under the Code to bring them. One goal of the Bankruptcy Code is to ensure equal distribution among creditors, allowing for preferential treatment of certain creditors pursuant only to congressional authorization. *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 655 (2006) (citations omitted). Under 11 U.S.C. § 725, priority and secured claims are to be paid before any distributions are made to unsecured creditors. If any funds remain after priority claims are paid, then unsecured creditors may receive a distribution. *Midway Airlines v. Solow* (*In re Midway Airlines, Inc.*), 383 F.3d 663, 669 (7th Cir. 2004). In this case, Sentinel customers are unsecured creditors. So although under the recovery structure put forth here, the assignors must divide any proceeds pro rata among themselves, they are essentially circumventing the order of priority of claims established by the Code. For this reason, it is crucial that the estate be the real party in interest, and that the Trustee not be allowed to do by virtue of assignment what he may not do on his own.

Further militating against Trustee's standing here is the possibility of subrogation. In *Williams* the court addressed the issue of whether, where the debtor and Defendant are *in pari delicto*, Defendant would be able to subrogate itself to the assignors' position and recoup any recovery to which assignors may be entitled. 859 F.2d at 667. The Court held that where such a possibility exists, there would be little advantage in giving trustee standing to sue. *Id.* at 667 (citing *Caplin,* 406 U.S. at 430). While the defense of *in pari delicto* has been raised by BNY against the Trustee, the issue has not yet been decided, neither has the validity of BNY's lien upon Sentinel's assets. But, as the Supreme Court noted in *Caplin*, regardless of whether subrogation is appropriate here,

> the fact remains that in every reorganization there is going to be a question of how much the trustee in reorganization should be permitted to recover on behalf of the debenture holders. The answer is, of course, whatever he cannot recoup from the corporation. . . . In other words, debenture holders will not be able to recover damages from the indenture trustee until the reorganization is far enough along so that a reasonable approximation can be made as to the extent of their losses, if any.

406 U.S. at 430-431. The Court reasoned that the creditors should therefore represent their own interests and decide for themselves whether of not it would be "worthwhile" to seek recovery on any losses. It is true that the assignments in this case reflect the creditors' decision as to whether to proceed with their claims, but the Court's point is well taken – we do not know at this time what the customers' damages, unsatisfied by the bankruptcy proceeding, will be. Moreover, with subrogation as a possibility, "it is as difficult here as it was in *Caplin* to see what advantage there is in giving the trustee standing to sue." *Williams*, 859 F.2d at 667.

Trustee maintains that, "[t]aken to its logical extension, BNY's argument would mean that the custumers could have validly assigned their claims to anyone in the world except the liquidation trust." However, were the customers to assign their claims to someone else, or to pursue them on their own, the same considerations with regard to order of priority and subrogation would be implicated. In *Shatkin v. Bank of New York Mellon Corporation*, 2008 WL 2446837, No. 07 Civ. 7928(PAC), at *2 (S.D.N.Y. June 17, 2008), one of the assignor/creditors involved in this action filed a putative class action against Defendants alleging the same misconduct asserted in the Trustee action against BNY. In its opinion staying the proceeding pending the outcome of the proceeding in Bankruptcy Court, the court in *Shatkin* noted that

> Plaintiff, putative class members, and BNY are parties to the bankruptcy proceeding; the Bankruptcy Court will determine

>whether BNY had a valid, first-priority security interest in and lien
>upon the assets at issue and how the remainder of Sentinel's assets
>are to be distributed; and, as a consequence of this proceeding,
>Plaintiff and the putative class members may be compensated for
>any injuries allegedly sustained.

*Id.* The reasons for the stay reflect several of the same concerns that informed the Court's decision in *Caplin*. While Trustee is correct that the customers could assign their claims to someone other than Trustee without being barred from pursuing the claims, that is not to say that the claims brought by another assignee would go forward uninhibited. The prudential limitations on a trustee's standing imposed in *Caplin* with regard to Trustee's standing apply here, notwithstanding the assignment of claims.[6] Indeed, if the Trustee could bring these claims, there would be good reason to stay proceedings on those claims as Judge Crotty stayed Shatkin's claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: July 28, 2009

---

[6] The court in *Caplin* pointed to the potential of inconsistent actions by the creditors on their own behalf as another reason to deny the trustee standing. Trustee argues that "It makes no sense to reject standing to one plaintiff because some other person might have a claim against the same defendant." However, the Court was concerned with the inconsistency of the trustee's suits on behalf of a certain creditor with any independent action that same creditor would himself bring. 406 U.S. 432. Judge Crotty's stay of the proceeding in *Shatkin* suggests some regard for such possible inconsistency, where Shatkin, a party to the bankruptcy proceeding and an assignor in this case, brought his own claim in a separate proceeding. It is not difficult to imagine the possibility of inconsistency with regard to these claims.